FILED

UNITED STATES DISTRICT COURT

DEC 28 2005

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION



\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| KRANTZ, INC., a South Dakota Corporation, d/b/a KRANTZ BUICK OLDS NISSAN, INC., and BILLION SOUTHTOWN, INC., a South Dakota Corporation, | \* \* \* \* \* | CIV 05-1015<br>**2005 D.S.D. 25** |
| Plaintiffs, | \* \* \* | |
| -vs- | \* \* | ORDER AND OPINION |
| NISSAN NORTH AMERICA, INC., a California Corporation, | \* \* \* | |
| Defendant. | \* \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| KRANTZ, INC., a South Dakota corporation, d/b/a KRANTZ BUICK OLDS NISSAN, INC., | \* \* \* \* | CIV 05-3018 |
| Plaintiff, | \* \* | |
| -vs- | \* \* | |
| NISSAN NORTH AMERICA, INC., a California Corporation, | \* \* \* | |
| Defendant. | \* \* \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**KORNMANN, U.S. DISTRICT JUDGE**

[¶1]    This is a consolidated Order in the two cases described above.

## SUMMARY JUDGMENT STANDARDS

[¶2]     We have various pending motions. One is a motion for summary judgment. The summary judgment standard is well known and has been set forth by this court in numerous opinions. *See* Hanson v. North Star Mutual Insurance Co., 1999 DSD 34 ¶ 8, 71 F.Supp.2d 1007, 1009-1010 (D.S.D. 1999), Gardner v. Trip County, 1998 DSD 38 ¶ 8, 66 F.Supp.2d 1094, 1098 (D.S.D. 1998), Patterson Farm, Inc. v. City of Britton, 1998 DSD 34 ¶ 7, 22 F.Supp.2d 1085, 1088-89 (D.S.D. 1998), and Smith v. Horton Industries, 1998 DSD 26 ¶ 2, 17 F.Supp.2d 1094, 1095 (D.S.D. 1998). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R. Civ.P. 56(c); Donaho v. FMC Corp., 74 F.3d 894, 898 (8th Cir. 1996). "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." Mansker v. TMG Life Ins. Co., 54 F.3d 1322, 1326 (8th Cir. 1995). The evidence must be viewed in the light most favorable to the non-moving parties, here the plaintiffs in CIV. 05-1015.

## BACKGROUND OF THESE CASES

[¶3]     Krantz, Inc. ("Krantz") was for many years an automobile dealer in Watertown, S.D., for Nissan North America, Inc. ("Nissan"). Without the knowledge or permission of Nissan, Krantz sold the dealership assets (including all intangible assets and contract rights) to Billion Northtown, Inc. ("Billion"). The Billion family has been engaged in automobile dealerships in Sioux Falls, S.D., for many years. The family and the dealerships have an excellent reputation. Members of the Billion family own the stock in a corporation doing business as a Nissan dealer in Sioux Falls. Upon discovering, in part, what Krantz had done, Nissan gave notice to Krantz that Krantz had materially violated the dealership agreement and, as a result, would no longer be a Nissan dealer. Nissan refused to "honor" any transfer of the dealership to Billion.

[¶4]     Krantz then commenced a civil action against Nissan in state circuit court, Codington County, S.D. Nissan removed the case to the Northern Division of the District of South Dakota and the case became CIV. 05-1015. Krantz sought a temporary restraining order or, in the alternative, a preliminary injunction. Krantz later filed an amended request for such relief. I conducted a rather extensive factual hearing on April 5, 2005, considered the extensive briefs filed, allowed oral argument, examined the exhibits, and issued a written order and opinion

2

denying the request for a preliminary injunction. I denied on the record at the hearing the request for a temporary restraining order.

[¶5] It is useful to repeat and supplement portions of the Order which earlier denied the amended request for a preliminary injunction. After oral argument was conducted, certain records of the Department of Revenue and Regulation ("Department") were furnished and examined. Terry Krantz on behalf of Krantz wrote to the Division of Motor Vehicles of the Department on February 8, 2005, stating, *inter alia*, that Krantz, Inc. was "sold" to Billion Southtown, Inc., that Krantz had entered into a management agreement with Billion, and that Krantz had agreed to let Billion "use our dealer license numbers and act on our behalf until the franchise agreements have been transferred." All such activities clearly violate, in fact and in spirt, the franchise agreement between Krantz and Nissan. The interim management agreement between Krantz and Billion was entered into on January 11 but not furnished to the state agency until February 8, 2005. It was not furnished to Nissan until the court requested it after this lawsuit was in progress.

[¶6] Billion applied to the Department on December 24, 2004, for a state license to sell Nissan new cars in Watertown, falsely representing that it held a franchise agreement with Nissan in Watertown. On that basis, the license was issued. The license was later withdrawn or surrendered. There was no evidence that Krantz ever asked Nissan for permission to, in effect, transfer the franchise. Krantz simply presented to Nissan an attempted *fait accompli*. All the documents of sale and management between Krantz and Billion clearly reflect the same. The sale was specifically not contingent upon a transfer of the Nissan franchise to Billion. Krantz has been paid in full by Billion, something in excess of $3 million. Krantz has surrendered all management responsibilities, obligations, and risks to Billion. As already stated, all of this is clearly in violation of the franchise agreement between Nissan and Krantz. Neither Krantz nor Billion were initially "up front" with Nissan in furnishing all relevant documents. Not until the court requested the documents were all documents furnished. Billion was clearly doing business as a Nissan dealer in Watertown with no franchise and no approved transfer of any kind. Billion had no legal right to a license to sell Nissan products in Watertown. Yet Billion, without authorization, sold Nissan products in Watertown. With the assistance of the Department,

3

Billion and Krantz concocted an affidavit to be attached to each Nissan motor vehicle title actually delivered as part of Nissan sales by Billion in Watertown, stating that the vehicles had been sold by Krantz, something that was not true. The court very frankly takes a dim view of people and state agencies concocting materially false affidavits. Krantz did not apply for a new motor vehicle license for 2005 until February 9, 2005. As shown by exhibit 23 from the evidentiary hearing conducted by this court, Krantz, in 2005, did not possess any motor vehicle dealer's license until March 8, 2005. Thus, from the period of January 1 until March 8, Krantz had no license to sell motor vehicles in Watertown. Krantz did not even apply for a 2005 license until Krantz received a notice from the Department dated February 4, advising that the franchise laws had been violated and that, effective immediately, sales of all new vehicles were to cease. One would wonder how Krantz could have legally sold Nissan vehicles (pursuant to the concocted affidavits) prior to March 8. To make matters worse, Krantz could not have sold motor vehicles at any time in 2005 since Krantz had sold all its personal property assets to Billion, had leased its real estate to Billion for an initial term of ten years, and had no line of credit. One would also wonder how the Department could have issued any license to Krantz for 2005. It is indeed possible that the Department did not have all the relevant paperwork or know all the facts.

[¶7] Krantz was clearly contractually obligated to give Nissan advance notice and a reasonable opportunity to evaluate any proposed transfer. Krantz failed to do so and treated Nissan unfairly. Krantz and Billion would have known that Nissan, on March 20, 2002, had given written notice to Krantz that Krantz could continue to operate the dealership in Watertown but that, upon the death of Krantz or any attempted cessation of business by Krantz, by transfer or otherwise, Nissan no longer wanted to do business in the Watertown market and would not approve any new franchisee. The franchise agreement contemplated and permitted such notice and decision. Whether South Dakota law would have permitted the same had Krantz and Billion acted correctly is not a question that now needs to be addressed. Krantz had clearly stopped doing business in Watertown and had canceled its surety bond and insurance. The cancellation notice from Federated Mutual Insurance Company to Krantz shows cancellation as of January 1, 2005.

[¶8] A memorandum dated February 9 from Sherri Miller of the Department to then Secretary Viken and Governor Rounds' office shows what was going on here. She states that she had a conference call with Terry Krantz and two comptrollers, one for Krantz and one for Billion. She states, *inter alia*: "Billions will transfer all of the Nissan vehicles from Watertown to the Sioux Falls Billion dealership for sale (the Sioux Falls location has a Nissan franchise). If this happens, the Billion license, minus the Nissan franchise, can be activated in Watertown as well." There is another Department memorandum dated February 7, 2005. "According to DOR, Billion Motors bought-out 3 of Krantz automotives (sic) businesses. They were to apply for new franchise agreements before being issued new licenses which did not occur. The local DOR office issued the licenses without franchise agreements because they understood that they were 'on their way.'" There would have been no basis at all for either Krantz or Billion to represent to the Department that the Nissan franchise was "on the way." Another memorandum of February 8 reports that Terry Krantz "is in the process of selling his 3 automotive dealerships . . .", reporting that the "transaction is not final." Such representations, if made, were obviously false.

[¶9] I found that what has occurred here has been a series of shell games. I refused to endorse or assist what earlier transpired here. I found that it would be contrary to the public interest to do that. I found that an injunction ordering Nissan to continue to supply motor vehicles might well have resulted in this court ordering violations of law and violations of the franchise agreement. I found that the "public interest" factor was overwhelmingly against Krantz and favored Nissan.

[¶10] As to the threat of irreparable harm to the movant, I found that such factor was entitled to little weight. I found that any harm to Krantz was caused by Krantz and Billion and not by Nissan. I found that parties cannot act as Krantz and Billion have acted and then claim irreparable harm. I held that equity would not permit this. I found also, based on the oral argument and evidentiary hearing that Nissan dealers often sell or trade vehicles back and forth. Thus, Billion could well have moved Nissan vehicles from its Nissan business in Sioux Falls to Watertown and sold them in Watertown through the Krantz bogus license. Billion had already moved one vehicle from Watertown to Sioux Falls. The parties have since assured the court that no other vehicles have been moved and that Billion presently sells no Nissan vehicles in Watertown, S.D.

5

[¶11]   I found that the harm to Krantz was self-inflicted. I found that Nissan should not be ordered to possibly violate the law or abandon its contractual and statutory rights.

[¶12]   I also found that Krantz lacked standing since Billion had completely stepped into the management and control of the business in Watertown. Krantz had no possibility of being injured by failure of the dealership, failure of Billion to obtain the Nissan franchise, or failure of Nissan to continue to ship vehicles to Watertown. Nissan had been continuing to bill for the outdoor Nissan sign but Billion was obviously paying any such bill and was obligated by the asset purchase agreement ("APA") between Krantz and Billion to continue to do so. As previously noted, Billion leased the dealership real estate from Krantz or a Krantz entity for an initial term of ten years at $11,000.00 per month. The lease is not in any manner contingent upon Billion holding any Nissan franchise at Watertown. Apparently, Billion had no problem taking over other automobile dealer franchises in Watertown from Krantz.

[¶13]   I also found that Billion agreed in the so-called interim management agreement with Krantz to indemnify Krantz for, *inter alia*, "all actual damages or losses relating to any action taken by Buyer [Billion] in the operation of Sellers' [Krantz] Business which violates or is in noncompliance with the Franchise Agreements . . ."

[¶14]   The progress of this civil action in the Northern Division has been somewhat delayed since Krantz and Nissan went through the administrative hearing process to determine the rights of the parties under the franchise agreement. Nissan prevailed in that state forum. Krantz then filed an appeal to the state circuit court in Pierre, S.D. Nissan removed the appeal to the United States District Court, Central Division, which action is CIV. 05-3018.

[¶15]   In CIV. 05-1015, Billion was added as an additional plaintiff and an amended complaint was allowed.

## QUESTIONS OF STANDING IN APPEAL FROM ADMINISTRATIVE RULING

[¶16]   I turn now to the Central Division case, the appeal from the administrative decision. The first question to be addressed in that case is the question of "standing." General principles will first be addressed. Standing is a threshold matter that, if absent, prevents this court from exercising jurisdiction. Arkansas Right to Life State Political Action Comm. v. Butler, 146 F.3d 558, 560 (8th Cir. 1998). See Steel Co. v. Citizens for a Better Env't, 118 S.Ct. 1003, 1012-13

(1998) (holding that federal courts may not consider other issues before resolving standing, an Article III jurisdictional matter). The Constitution requires a party to satisfy three elements before such party has standing to bring suit in federal court and these three elements are injury in fact, causation, and redressability. *Id.* at 1016-17. The party invoking federal jurisdiction has the burden of establishing these three elements. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). The question of standing has nothing to do with the merits of the case. Warth v. Seldin, 422 U.S. 490, 500 (1975), tells us that "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." "Standing doctrine embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked ... The requirement of standing, however, has a core component derived directly from the Constitution. A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief. 454 U.S. at 472." Allen v. Wright, 468 U.S. 737, 751 (1984).

[¶17] A plaintiff may also be denied standing, even if he meets the Article III standing requirements, if he runs afoul of certain judicially-constructed prudential limits on standing. Valley Forge Christian Coll. v. Am. United for Separation of Church and State, Inc., 454 U.S. 464, 474-75 (1982). We know also that one of the prudential limitations on standing teaches that a plaintiff has no standing to address "abstract questions of wide public significance which amount to generalized grievances, pervasively shared and most appropriately addressed in the representative branches." Valley Forge, 454 U.S. at 475.

[¶18] To put it more succinctly, a federal court does not issue advisory opinions on general principles of law. We do not write opinions as law review articles are written.

[¶19] "[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." North Carolina v. Rice, 404 U.S. 244, 246 (1971). The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. Nat'l Fed'n of the Blind of Mo. v. Cross, 184 F.3d 973, 979 (8th Cir. 1999).

7

[¶20] We have a rather curious factual situation here. The state administrative hearing officer held, *inter alia*, that Krantz had no standing before the state administrative hearing officer. As previously noted, after losing the administrative hearing, Krantz appealed to the South Dakota circuit court. Nissan removed the case to federal court, invoking federal jurisdiction. Nissan obviously has "standing" to protect its interests as a franchisor of Nissan franchises.

[¶21] The court originally questioned whether this court would be prohibited by Rooker-Feldman (Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983)), from indirectly attempting to possibly undermine a state administrative agency decision. The doctrine interprets 28 U.S.C. §1257 to deprive lower federal courts of jurisdiction to hear challenges to state court judgments except in habeas corpus proceedings and this applies to state proceedings that are essentially judicial in nature. Feldman, 460 U.S. at 476. *See also* Ballinger v. Culotta, 322 F.3d 546, 548 (8th Cir. 2003). The Rooker-Feldman (Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983)), doctrine forecloses indirect attempts to undermine state court decisions. The doctrine applies even though a party to the federal action was not a party in the state court action. *See* Lemonds v. St. Louis County, 222 F.3d 488, 492-95 (8th Cir. 2000). The doctrine applies to claims for injunctive and declaratory relief, as well. Keene Corp. v. Cass, 908 F.2d 293, 297 (8th Cir. 1990).

[¶22] The United States Supreme Court has recently narrowed application of the Rooker/Feldman doctrine to "cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus., 125 S.Ct. 1517, 1521-22 (2005).

[¶23] "Exxon Mobil makes clear that the Rooker/Feldman doctrine precludes federal district court jurisdiction only if the federal suit is commenced after the state court proceedings have ended. *See id.* at 1527 ('[N]either Rooker nor Feldman supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court.'); see also Mothershed v. Justices of Supreme Court, 410 F.3d 602, 604-05 n. 1 (9th Cir. 2005) (determining whether state-court

8

proceedings were complete as the first step of a post Exxon Mobil Rooker/Feldman analysis). There is no judgment to review if suit is filed in federal district court prior to completion of the state-court action. Rather, '[d]isposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law.' Exxon Mobil, 125 S.Ct. at 1527." Dornheim v. Sholes, No. 04-4032, 2005 WL 3299724 (8th Cir. December 7, 2005). Krantz did not raise the doctrine as a bar and the court is satisfied in any event that the doctrine, especially as recently narrowed, does not prohibit the court from acting. The removal converts the case into a civil case in which both diversity of citizenship and the requisite amount in controversy clearly exist.

**PROBLEMS AND ISSUES WITH REGARD TO SUMMARY JUDGMENT MOTION**

[¶24] In CIV. 05-1015, Nissan filed on November 8, 2005, a motion for a summary judgment, supported by the required memorandum of law and statement of material facts. The latter document clearly made reference to D.S.D.LR 56.1(B). Krantz and Billion had until December 1 to reply to the motion (20 days plus three days for mailing (even though the motion was filed electronically, which additional three days is mandated by Fed.R.Civ.P. 6(e))). Such time limit for all motions is clearly provided by D.S.D.LR 7.2(A). The severe consequences to a party who fails to timely file the opposing party's required statement of material facts are clearly set forth in D.S.D.LR 56.1(D). The requirements of a timely response in connection with a summary judgment motion are clearly set forth in D.S.D.LR 56.1(C).

[¶25] Ignoring the requirements of the local rules, plaintiffs filed nothing in response to the summary judgment motion. Not until December 13 did the attorney representing plaintiffs serve and file a motion (Doc. 60) seeking additional time to oppose the summary judgment. The motion is captioned incorrectly since it makes no mention of Billion and purports to be made only on behalf of Krantz. Plaintiffs' attorney complains that no certificate of service accompanied the motion for summary judgment and it was also not mailed. Counsel for plaintiffs must not have read the "Attorney Registration Form" for the ECFS filing system used in this District, a document which the attorney signed. It clearly provides, *inter alia*: "Registration constitutes an attorney's consent to service by electronic means as substitute for service pursuant to Federal Rules (sic) of Civil Procedure 5." No certificate of service or mailing was required.

9

[¶26] Counsel for plaintiffs also refers to what he calls "the normal rules" which he claims allow 30 days to respond to a motion. I do not know what he is talking about. He cites no authority. It would make no difference in any event. What counts is what is clearly specified in the Local Rules which apply to all actions within this District. The Federal Rules of Civil Procedure do not specify any deadlines as to summary judgment motions and any lawyer would therefore know that the local rules must be consulted. Plaintiffs' attorney, in filing the motion, has also violated another rule, namely D.S.D.LR 7.2(A) which clearly requires a brief to be filed to support any written motion. Failure to do so allows the court to summarily deny the motion.

[¶27] Counsel for plaintiffs makes numerous references to counsel for the defendant treating him unfairly in raising the defaults of plaintiffs. The requirements and deadlines set forth in rules of the court are not something that counsel can excuse or agree to disregard. Only the court can do that in proper circumstances. If the motion for enlargement of time is made after the deadline has passed (which it was here), the court also has no authority to extend the time unless "the failure to act was the result of excusable neglect." Fed.R.Civ.P. 6(b)(2). It is not a question of prejudice to anyone, as counsel for plaintiffs contends. It is not a question of "neglect." It is a question of "excusable neglect." A judge should "bend over backwards" to find excusable neglect since defaults are not favored under the law. However, nothing is set forth in Doc. 61 which even claims excusable neglect. The words are not even used. They are also not used in Doc. 62 which was filed by plaintiffs (again with the wrong caption) after plaintiffs knew that defendant was claiming in its response that excusable neglect had not been shown or even alleged in Doc. 61. Failure to read and follow rules which are clear does not constitute excusable neglect. This court attempts to help and guide young lawyers. Lawyers and judges know that, while experience in the practice of law is the best teacher, we were all taught in law school how important it is to know the rules and to follow them. The court notes that counsel for plaintiffs was admitted to the bar in 1987. He is an active member of the State Bar of South Dakota.

[¶28] Counsel for Nissan wrote to the court with a copy to counsel for plaintiffs on December 8, pointing out that the deadline to respond had expired on December 1. One wonders whether and when, in the absence of that letter, counsel for plaintiffs would have responded to the pending summary judgment motion. Counsel for plaintiffs, even if he thought (without any good

10

reason) that 30 days was allowed (plus three extra days), did nothing until he claims to have received the letter from counsel for defendant on December 13. His claimed 30 day deadline had already expired. In addition, a motion for a summary judgment is not a solicitation to obtain another credit card. It is a very serious matter and any attorney would know of the obligations to quickly respond and to be sure that all actions were taken in a timely manner. A summary judgment is a death sentence, unless reversed on appeal, for your case.

[¶29]   With a motion pending seeking additional time to respond, counsel for plaintiffs has now filed a claimed response (Doc. 63) to the pending summary judgment motion on December 23, 2005. Plaintiffs have also electronically filed on the same date their claimed response (Doc. 64) to Nissan's statement of material facts and the claimed statements of additional facts on behalf of plaintiffs. To make matters worse, counsel for plaintiffs filed electronically on December 27 what he calls an "appendix" (Doc. 66) which consists of 332 pages. All documents again have the wrong caption. Counsel for plaintiffs had no authority to make such filings and should not have done so, especially knowing that he had previously sought <u>leave of court</u> to make such late filings. Having not heard from the court, he proceeded on his own. Counsel for plaintiffs continues to violate both the letter and the spirit of the rules of this court. D.S.D.LR 56.1(C) provides that a party (here plaintiffs) when opposing a motion for summary judgment "shall include a separate, **short, and concise** statement of the material facts as to which it is contended that there exists a genuine issue to be tried."(emphasis supplied) Counsel for plaintiffs has very frankly cluttered up the file with all these pages and virtually all of them have already been before the court. He includes, among other things, an entire transcript of a deposition, the transcript of the hearing earlier conducted by this court, and the memorandum opinion and order previously filed. All such filings have no legal significance at this time and Nissan is directed to not respond.

[¶30]   This court, in an effort to advise and help lawyers practicing in the Northern and Central Divisions of the District of South Dakota, has from time to time prepared and filed what are called "standard operating procedures." They are not formal rules but written guides. Every attorney practicing is so advised and instructed to read and follow those procedures. A copy is routinely furnished by the clerk's office to lawyers and a copy is on file in the clerk's office.

Number 13 provides: " If you are filing a motion for <u>summary judgment</u> or opposing one, do not submit entire deposition transcripts. Submit only pages and portions of documents that are relevant with the relevant material highlighted. As one circuit has said: "Judges are not like pigs, hunting for truffles buried in briefs." Number 14 provides: "Follow the <u>briefing time schedules</u> and the page limitations set forth in the Local Rules for the District of South Dakota." Counsel for plaintiffs paid absolutely no attention to these informal directives.

[¶31] For all the reasons stated, the motion (Doc. 60) of plaintiffs should be denied. The court treats Nissan's statement of material facts as being admitted as required by D.S.D.LR 56.1(D). A summary judgment should be granted in favor of Nissan and against plaintiffs. There are no genuine issues of material fact. No excusable neglect has been shown or even properly alleged.

## RULING IN CIV. 05-1015 REGARDLESS OF DEFAULT OF PLAINTIFFS

[¶32] Regardless of the defaults of plaintiffs, I would make the same findings and conclusions as set forth above in the section of this opinion entitled "Background of these Cases" as a matter of law at this time. In other words, the ruling on the summary judgment motion would be the same, even without the defaults of the plaintiffs.

[¶33] Plaintiffs have no cause of action under 15 U.S.C.§1222. There is no genuine issue of any material fact as to whether Nissan acted in bad faith. Nissan acted in good faith and did not violate the so-called Dealers Day in Court Act. Billion lacks standing since it was never legally a Nissan dealer in Watertown, S.D. Krantz lacks standing because it voluntarily and clearly relinquished any claims to legally be a Nissan dealer in Watertown, S.D. Billion and Krantz caused all of their problems, legal and otherwise. Plaintiffs have no valid claims under either federal or South Dakota law and there are no genuine issues of material fact which would support any such claims. In addition, if the administrative action is affirmed (which it will be, as will appear), Krantz and Billion would be judicially estopped to make any claims for damages in CIV. 05-1015. It is clear beyond doubt that Krantz materially breached its contracts with Nissan. Krantz is thus barred from claiming that Nissan breached the dealership franchise agreement. "Material breach provides one basis for excusing [the other party's] performance under the contract. *See* Restatement (Second) of Contracts, §237 (providing that uncured material breach relieves non-breaching party of obligation to render further performance)." <u>Miller v. Mills</u>

Const., Inc., 353 F.3d 1166, 1172 (8th Cir. 2003) (interpreting South Dakota law). "Under South Dakota law, a material breach is one that 'would defeat the very object of the contract.' *Icehouse, Inc. v. Geissler*, 636 N.W.2d 459, 465 (S.D. 2001) (quoting *Thunderstick Lodge, Inc. v. Reuer*, 585 N.W.2d 819, 825 (S.D. 1998)." *Id.* Normally, the question of whether the conduct of a party amounts to a material breach would be a question of fact. Any such questions, however, must be both genuine and material. There are no questions of fact here which are either material or genuine. What Krantz did and did not do (with Billion) is undisputed and clear.

## RULING IN CIV. 05-3018

[¶34]  Krantz is here attempting to obtain relief, namely an overturning of what the administrative law judge did. Billion was not a party before the administrative law judge and sought no administrative relief. If Krantz was and is no longer a Nissan dealer with the rights of a dealer under South Dakota law, there is nothing that can be done here or should be done here to grant relief to Krantz. As a matter of law, Krantz sold all its assets (and attempted to sell the Nissan franchise) to Billion. Krantz could not today qualify as a dealer. It could not be granted a license by the Department. It has no physical plant to use and no real estate to use. It has no line of credit. It has no equipment or service facilities to honor warranty agreements or provide service for Nissan vehicles. It is in fact an absolute impossibility for Krantz to be a dealer under the facts as they exist today. Not all the king's horses or all the king's men can put Krantz back together again as a Nissan dealer in Watertown, S.D.

[¶35]  Let us assume that the court could order Nissan to grant dealership privileges to Krantz. Certainly, neither Krantz nor Billion ever intended or contemplated that Krantz would continue to be an automobile dealer in Watertown, S.D., in direct competition with Billion. They contemplated and agreed that Krantz would be out of the business in Watertown and Krantz was, in fact, "out of the business" as of December 31, 2004. If Krantz would re-enter the market, Billion would lose a substantial part of "the bargain." Thus, in a real and practical sense, redressability does not exist here as to Krantz. There is nothing this court can or should do for Krantz. I fully recognize that Section 8.9 of the APA between Krantz and Billion required Krantz to take "all actions that are reasonably necessary on [Krantz's] part to obtain the consents of [Nissan] to the issuance to Billion of an exclusive franchise for the sale of new vehicles in the

same geographical area as [Krantz's] current franchises." This same section provides, however, that none of Billion's obligations under the APA would be altered by the failure to obtain such consents. Krantz has been paid in full. Krantz has "nothing to lose" and "nothing to gain." Nor does Billion claim that Krantz has not done all it could reasonably do to assist Billion.

[¶36] The claim of Krantz that the parties to the APA did not intend to cause Krantz to lose standing and the right to continue as a Nissan dealer (until the transfer to Billion) frankly makes no sense. The APA is not ambiguous. It is very clear. If the parties had some intent other than as expressly stated in the APA, they could and should have said so. Krantz in effect contends that it did not intend to give up the dealership when the contract says very clearly throughout the APA that it did For example, paragraph 2.8 of the APA provides that Krantz and Billion acknowledge that "all third party approvals required by the Acquisition Agreement" have been received by Billion. While this was not true, Krantz intended to sell the Nissan franchise to Billion and Billion accepted the transfer, agreeing to take its chances with Nissan. The other documents of sale and transfer are also unambiguous. Even assuming that Krantz (a corporation without thoughts) did not think that the attempted transfer of the Nissan franchise (as clearly provided throughout the APA) would result in an immediate and automatic termination of the franchise, such is immaterial. Krantz had contractual obligations to Nissan as well as obligations under South Dakota law (dealing with automobile dealership franchises) and Krantz failed to comply with any of its obligations. There was clearly substantial and material misconduct by Krantz, justifying Nissan acting as it did and justifying the administrative law judge in holding as he did.

[¶37] The fact that Nissan filed a notice of termination with the state agency is not a material matter. Nissan did so without full knowledge of the facts. The lack of information was caused by defendants. In addition, before Nissan filed any notice of termination, the then lawyers for Krantz wrote to Nissan, claiming that Nissan could not terminate the franchise without a hearing by the state agency. The law firm told Nissan that Nissan could not prove that any defaults existed at the time of the transfer of the Krantz assets to Billion. That turned out to be not true. Nissan could and did prove that the defaults and material breaches of Krantz occurred simultaneously with the non-permitted sale and transfer.

[¶38] I agree with the contention of Nissan, namely that having presented Nissan with at least an attempted *fait accompli*, Krantz had no right to object under SDCL 32-6B-77. SDCL 32-6B-77 does not provide a "former dealer" with a right to object. Krantz could and did sell all its assets to Billion with or without the Nissan franchise. This does not consist of Nissan "having it both ways." Nissan had nothing to do with what was done between Krantz and Billion.

[¶39] Krantz claims that this court is required to fix a date for hearing, citing SDCL 1-26-33. State procedural statutes and rules do not govern matters of procedure or deadlines in federal court. The contention of Krantz to the contrary is rejected. This court has already conducted an evidentiary hearing with oral arguments and extensive briefing, all concerning largely what was involved in the administrative hearing.

[¶40] Krantz claims that the administrative agency did not base its ruling on a question of interpretation of a contract and thus the federal court is not being asked to "construe a contract." Regardless of the basis for the administrative ruling and holding, this court can affirm based on other good reasons. Contrary to what Krantz claims, this case does turn largely on the APA and the related documents, including the management agreement, the long term lease of the real estate between Krantz and Billion, the franchise agreement, and all the other documents described in this order and opinion.

[¶41] We have further procedural problems caused by counsel for Krantz. Krantz filed its appeal. This was followed by Nissan's reply brief on October 25. Krantz had perhaps until November 15, 2005, to file a reply brief and failed to do so. Nor did Krantz seek from the court any additional time to file the brief (until after the time had expired). Counsel for Krantz again sets forth that the "normal" response time is 30 days. Again, I do not know what he is talking about. All reply briefs in federal court in South Dakota are due within 23 days (including three days for mailing even though electronically filed). *See* D.S.D.LR 7.2(A). Nissan argues that the "movant may submit to the Court a reply brief within ten days after service of the brief in opposition." This is part of the rule in question and cautious practice for Krantz would have been to file within the 13 days. Regardless of what is required in this unusual case involving appeal of a state administrative proceeding ruling, Krantz failed to timely file. Krantz did not file until December 13 which was after the letter of December 8 from the attorney for Nissan which

15

Case 3:05-cv-03018-CBK   Document 27-2   Filed 12/28/05   Page 16 of 17 PageID #: 523

pointed out the default. Krantz has again failed to explain or even claim excusable neglect. As in the other action, the words "excusable neglect" are never mentioned by Krantz. As in the other action, Krantz violated another rule, namely D.S.D.LR 7.2(A), the title to which is "Required Written Brief." No brief was served or filed to support the motion to extend the time. That alone is sufficient to justify denying the motion. Despite seeking leave of court (Doc. 23) to file a late reply brief, counsel for Krantz filed the brief without leave of court. He should not have done so. Even a party proceeding *pro se* is not entitled to disregard the Federal Rules of Civil Procedure. Carman v. Treat, 7 F.3d 1379, 1381 (8th Cir. 1993). Nor is a party entitled to disregard the Local Rules of the United States District Court for the District of South Dakota.

[¶42] The motion of Krantz in CIV. 05-3018 should be denied. It is also moot unless the brief is to be expunged from the record. I have read it and it has no legal merit. The request for a hearing should also be denied. A federal court is not required to comply with SDCL 1-26-33.6. D.S.D.LR 7.1 provides that oral argument shall be had only upon order of the court and that requests for oral argument shall be made by separate statement at the conclusion of the motion or by a separate filing of the motion. As stated, the extensive administrative record with affidavits and documents is already before the court. All of that is quite enough.

[¶43] There is no need to address the constitutional issue raised by Nissan, namely that changes in South Dakota statutes which became effective after the Nissan-Krantz franchise agreement could not constitutionally be applied to Nissan.

[¶44] Now, therefore,

[¶45] IT IS ORDERED, as follows:

    1) The motion (Doc. 60) of plaintiffs in CIV. 05-1015 for leave to respond to the summary judgment motion and required statement of material facts is denied.

    2) The motion (Doc. 54) of Nissan for a summary judgment in CIV. 05-1015 is granted.

    3) The motion (Doc. 23) of Krantz in CIV. 05-3018 "for hearing and for leave to file reply brief" is denied.

    4) The Order entered by the hearing officer of the Office of Hearing Examiners as filed in CIV 05-3018 is affirmed and adopted; the appeal by Krantz is denied with prejudice.

5) The recent late filings made by plaintiffs (Docs. 63, 64, and 66) in CIV. 05-1015 have no legal significance.

6) Costs shall be taxed by the clerk.

[¶46] Dated this 29th day of December, 2005.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY Barbara J. Doepke
            DEPUTY
(SEAL)

17